## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JAMES SIMPSON,

                                  Plaintiff,

          v.                                              9:19-CV-1413
                                                      (MAD/ATB)

R. PRICE,

                                  Defendant.

JAMES SIMPSON, Plaintiff, pro se
KONSTANDINOS D. LERIS, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). Plaintiff brought this civil rights action asserting various allegations of constitutional violations that occurred while he was incarcerated at Cayuga Correctional Facility ("Cayuga C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

Plaintiff filed his original complaint on November 15, 2019. (Dkt. No. 1). By decision and order dated January 3, 2020, Judge D'Agostino dismissed plaintiff's complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915, 1915A. (Dkt. No. 4). In the same order, Judge D'Agostino granted plaintiff leave to file an amended complaint in order to cure some of the defects identified by the court. (*Id.*). Plaintiff filed an amended complaint on January 21, 2020. (Dkt. No. 5). On March 17, 2020, Judge D'Agostino accepted plaintiff's amended complaint for filing, only to the extent

it asserted an Eighth Amendment excessive force claim against C.O. Price. (Dkt. No. 8). On August 27, 2020, plaintiff filed a motion seeking leave to amend. (Dkt. No. 25). By decision and order dated September 24, 2020, Judge D'Agostino granted plaintiff's motion, in part, and accepted the second amended complaint for filing to the extent it asserted an Eighth Amendment excessive force claim against C.O. Price arising from events that occurred on October 10, 2018. (Dkt. No. 29).

There is some confusion as to what specific claims of Eighth Amendment excessive force survived initial review by the district court.[1] For purposes of this report-recommendation, the court recognizes the surviving claims in plaintiff's second amended complaint to include (1) an Eighth Amendment excessive force claim against C.O. Price stemming from the events that occurred on October 10, 2018, and (2) an

---

[1]Upon initial review of plaintiff's amended complaint, the district court acknowledged that the pleading was "not a model of clarity," but nevertheless liberally construed it to allege, among other things, an Eighth Amendment excessive force claim against C.O. Price arising out of allegations that C.O. Price tried to place plaintiff in leg shackles that were too small for him on August 9, 2019. (Dkt. No. 8 at 5). In the amended complaint, plaintiff also alleged various constitutional violations stemming from events which took place in October 2018. (*See generally* Dkt. No. 5). These claims did not survive initial review. (*See* Dkt. No. 8 at 2–8). Plaintiff subsequently filed his second amended complaint, which suffered from deficiencies similar to his former pleading. (Dkt. No. 30). Upon review, the district court construed the second amended complaint to allege an Eighth Amendment excessive force claim against C.O. Price concerning the October 2018 events. (Dkt. No. 29). The district court did not consider whether plaintiff properly raised allegations of excessive force against C.O. Price concerning events which took place on August 9, 2019, presumably because the second amended complaint did not specifically identify this time period. However, at his deposition plaintiff explained that his claims against C.O. Price, as set forth in his second amended complaint, stemmed from the events which took place on August 9, 2019. (Plaintiff's Deposition Transcript ("Pl.'s Dep.") at 37, 46–47, 69). Considering plaintiff's testimony, this court interprets the portion of the second amended complaint entitled "Statement of Claim" to address the excessive force claim against C.O. Price that took place on August 9, 2019, although plaintiff has admittedly characterized this claim as one of medical deliberate indifference, as opposed to excessive force. (Dkt. No. 30 at 2–3). At the request of the moving defendant and for the sake of judicial economy, this court will assess whether the latter excessive force claim against C.O. Price survives summary judgment, assuming it was properly pleaded in the first place.

Eighth Amendment excessive force claim against C.O. Price stemming from the events that occurred on August 9, 2019.

Presently before the court is defendant C.O. Price's motion for summary judgment pursuant to Fed. R. Civ. P. 56, seeking dismissal of the action. (Dkt. No. 41). Plaintiff responded in opposition to the motion on September 9, 2021. (Dkt. No. 43). Defendant filed a reply brief on September 16, 2021. (Dkt. No. 44). For the reasons set forth below, the court recommends granting defendant C.O. Price's motion for summary judgment and dismissing the second amended complaint in its entirety.

## I.    **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts

showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Local Rule 56.1(a).[2]  The same rule requires the opposing party to file a response to the moving party's statement of material facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issues arise.  Local Rule 56.1(b)*.*  The rule specifically provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*

Credibility assessments and the choice between conflicting versions of a story are generally for a jury to resolve. *Rule v. Brine, Inc*. 85 F.3d 1002, 1011 (2d Cir. 1996). However, the Second Circuit recognized an exception to this rule in *Jeffreys v. City of*

---

[2]Previously Local Rule 7.1(a)(3).

*New York*, 426 F.3d 549 (2d Cir. 2005). In *Jeffreys*, the court held that summary judgment may be granted in the rare case, "where there is nothing in the record to support the plaintiff's allegations, aside from his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court determines that 'no reasonable person' could credit . . . his testimony." *Quick v. Quinn*, No. 9:12-CV-1529 (DNH/DEP), 2014 WL 4627106, at *4 (N.D.N.Y. Sept. 11, 2014) (quoting *Jeffreys*, 426 F.3d at 54-55). In order for the court to apply the *Jeffreys* exception, the defendant must satisfy each of the following: (1) "the plaintiff must rely 'almost exclusively on his own testimony,' "(2) the plaintiff's "testimony must be 'contradictory or incomplete,' " and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense. *Id.* (quoting *Benitez v. Ham*, No. 04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *20-21 (N.D.N.Y. Oct. 21, 2009) (adopting report and recommendation) (quoting *Jeffreys*, 426 F.3d at 554)).

## II.    **Factual Contentions**

### A.    **October 10, 2018**

Plaintiff alleges that on October 10, 2018, he was advised that he had a medical appointment outside Cayuga C.F. (Second Amended Complaint ("SAC") at 2) (Dkt. No. 30). He informed the correctional officers responsible for his transport that "the leg irons they intended to use were to[o] small for [plaintiff's] ankles." *Id.* The officers ignored plaintiff and proceeded to place him in the small leg irons. *Id.* Fourteen hours later, plaintiff's ankles were severely bruised, "and [his] right ankle had an open wound where the shackle had grounded through [his skin]." *Id.* Approximately a week later, a

nurse informed plaintiff that the injury had become a "sever[e] infection necessitating daily attention by medical staff and antibiotics." *Id.*

### B.    August 9, 2019

Plaintiff was scheduled to attend a medical appointment at SUNY Upstate Medical University ("SUNY Upstate") on August 9, 2019.  (Pl.'s Dep. at 47; Declaration of Richard Price ("Price Decl.") ¶ 10).  C.O. Price was the officer responsible for escorting plaintiff to his medical appointment that morning.  (Pl.'s Dep. at 49; Price Decl. ¶ 10).  Accordingly, C.O. Price contacted plaintiff's dorm by phone at approximately 7:30 a.m., requesting that plaintiff arrive to the draft area by 8:15 a.m. in order to be strip frisked and to otherwise prepare for transport.  (Price Decl. ¶ 12). Plaintiff was late, however, and did not arrive to the draft room until 8:45 a.m.  (Pl.'s Dep. at 48–49, Price Decl. ¶ 13).

The parties' contentions diverge at this point.  According to the plaintiff, when he got to the draft room C.O. Price was "screaming" at him for being late.  (Pl.'s Dep. at 51).  Plaintiff was subsequently strip frisked, without incident, per facility protocol. (*Id.* at 51–52, 55).  After the strip frisk, plaintiff was under the assumption that he was going to be taken to the medical unit to have his ankle wrapped.  (*Id.* at 52).  Of note, plaintiff testified that he suffers from a medical condition that causes "abbreviations" and "deep imprints" in his skin when compression is applied.  (*Id.* at 32–33).  Plaintiff also asserted that, due to this medical condition, he had a permit for "big boy" cuffs to be used on his ankles.  (*Id.* at 43).  Plaintiff testified that C.O. Price knew plaintiff required larger ankle cuffs.  (*Id.* At 56).

Nevertheless, after the strip frisk C.O. Price told plaintiff, "we don't have time for you to go over there to medical to get your leg wrapped." (*Id.* at 52). C.O. Price then put plaintiff in the transport van, and tried to put standard size cuffs on plaintiff's ankles. (*Id.* at 52–53). Plaintiff told C.O. Price he would not wear the smaller cuffs. (*Id.* at 53). When C.O. Price tried forcing the cuffs onto plaintiff's ankles, plaintiff put his cane in front of his legs. (*Id.*). C.O. Price told plaintiff that he was going to "tell . . . people that [plaintiff] tried to hit [him] with a cane" if plaintiff didn't allow himself to be placed in the smaller cuffs. (*Id.*). Plaintiff continued to refuse. (*Id.*). C.O. Price made another attempt to place the cuffs on plaintiff's ankles, which caused a "scab" from an old wound to "pop[] back open" on plaintiff's leg. (*Id.* at 53, 58–59). Plaintiff testified that C.O. Price had "no choice" then but to let plaintiff out of the van and take him to the medical unit to get his leg wrapped. (*Id.* at 53).

After plaintiff's leg was wrapped, C.O. Price attempted once more to put the smaller cuffs on plaintiff, and threatened to take plaintiff to "the box" if he did not cooperate. (*Id.* at 54). Plaintiff refused, and ultimately C.O. Price got bigger cuffs (however, apparently not the "big boy" cuffs) and placed them onto plaintiff's ankles. (*Id.*). Plaintiff was transferred to SUNY Upstate, and upon his return C.O. Price took him "straight to the box." (*Id.*).

C.O. Price has submitted a declaration in support of his pending motion for summary judgement, which alternatively describes the events of August 9th. Upon plaintiff's arrival to the draft room that morning, C.O. Price maintains that he conducted a strip frisk of plaintiff, and then placed plaintiff in mechanical wrist

7

restraints. (*Id.* ¶ 14). Plaintiff was subsequently escorted to the facility van, where C.O. Price attempted to place standard size ankle restraints on him. (*Id.* ¶¶ 14–15). Plaintiff refused and "shoved" his cane at C.O. Price, "almost striking [C.O. Price] in the nose." (*Id.* ¶ 15). Plaintiff proceeded to place his cane between his ankles. (*Id.*). The cane was taken from plaintiff and C.O. Price gave plaintiff several direct orders to allow him to apply the restraints, however plaintiff refused to comply. (*Id.* ¶ 16). C.O. Price did not threaten to take plaintiff to the Special Housing Unit ("SHU"), nor did he threaten him in any other manner. (*Id.*).

Plaintiff eventually told C.O. Price that he had a permit for "big boy" cuffs on file with Cayuga C.F. medical staff. (*Id.* ¶ 17). C.O. Price maintains that he had no knowledge of plaintiff's purported permit at the time, and had escorted plaintiff on previous medical trips where standard size leg restraints were used. (*Id.* ¶¶ 18–20). Nevertheless, C.O. Price stopped attempting to place the ankle restraints on plaintiff and contacted the area supervisor. (*Id.* ¶ 21). They escorted plaintiff from the van to the medical unit, where a nurse placed a gauze bandage around one of plaintiff's ankles. (*Id.* ¶ 22).[3] At the same time, C.O. Price looked for but could not find documentation of plaintiff's purported medical permit for larger ankle restraints, thus a determination was made to use the standard size restraints on plaintiff. (*Id.* ¶ 24). Plaintiff eventually allowed C.O. Price to place his ankles in the standard size leg restraints, and they departed for SUNY Upstate. (*Id.* ¶¶ 25–26). The remainder of the trip went without incident. When they returned, C.O. Price issued plaintiff a misbehavior report charging

---

[3]C.O. Price denies that plaintiff was taken to medical because of an injury caused by him. (Id. ¶ 23).

him with interference with an employee, lying/providing false information, and refusing a direct order. (*Id.* ¶ 28, Ex. B). C.O. Price avers that plaintiff was not injured, nor did he complain of being injured, at any time on August 9, 2019. (*Id.* ¶ 32).

## DISCUSSION

### III.   October 10, 2018 Excessive Force Claim

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). The district court interpreted plaintiff's second amended complaint to assert that C.O. Price was one of the officers who escorted plaintiff to his medical appointment. (*See* Dkt. No. 29 at 3). However, at his deposition plaintiff testified to the contrary, confirming that C.O. Price was not involved in the October 10, 2018 incident. (Pl.'s Dep. at 37). Thus, it is undisputed that C.O. Price was not present, or otherwise involved, in the events surrounding plaintiff's allegations of excessive force on October 10, 2018.[4] (*See* Pl.'s Dep. at 37; Price Decl. ¶¶ 5–6, Ex. A). Accordingly, the court recommends that the second amended complaint be dismissed against C.O. Price as it relates to this claim.

---

[4]In his opposition papers, plaintiff appears to argue that this claim should not be dismissed against C.O. Price. (Plaintiff's Brief ("Pl.'s Br.") at 3–5). Plaintiff's argument is misplaced, however, as it only addresses the events which unfolded on August 9, 2019, and why C.O. Price should be held liable for his actions on that day. (*Id.*).

IV.    **August 9, 2019 Excessive Force Claim**

    A.    **Exhaustion of Administrative Remedies**

        1.    **Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing

10

suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id.* § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC").  *Id.* § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance."  *Id.* § 701.3(a) (Inmate's Responsibility).  There is also a special section for complaints of harassment.  *Id*. § 701.8.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)).  The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement.  *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances."  *Ross v. Blake*, 578

11

U.S. 632, 136 S. Ct. 1850, 1857 (June 6, 2016).  "'[M]andatory exhaustion statutes like

the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'"

*Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. Sept. 1, 2016) (quoting *Ross*, 578

U.S. at __, 136 S. Ct. at 1857).  Although *Ross* did away with the "special

circumstances" exception, the other two factors in *Hemphill* – availability and estoppel

– are still relevant.  The court in *Ross* referred to "availability" as a "textual exception"

to mandatory exhaustion, and "estoppel" has become one of the three factors in

determining availability.  *Ross*, 578 U.S. at __, 136 S. Ct. at 1858.  Courts evaluating

whether an inmate has exhausted his or her administrative remedies must focus on

whether those remedies were "available" to the inmate. *Id.; see also Riles*, 656 F. App'x

at 580.  An administrative procedure is "unavailable" when

> (1) "it operates as a simple dead end – with officers unable or
> consistently unwilling to provide any relief to aggrieved
> inmates; (2) it is "so opaque that is [sic] becomes, practically
> speaking, incapable of use"; or (3) "prison administrators
> thwart inmates from taking advantage of a grievance process
> through machination, misrepresentation, or intimidation."

*Ross*, 578 U.S. at __, 136 S. Ct. at 1859-60.

In *Ross*, the Supreme Court gave examples of the circumstances under which

each of the above would apply.  *Id*.  The first circumstance listed above involves a case

in which the relevant "administrative procedure" lacks the authority to provide "any"

relief.  *Id.* at 1859.  The second example is when the administrative procedure "exists,"

but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate

it." *Id.*  Finally, administrative remedies are not available if prison administrators

prevent inmates from taking advantage of the grievance process by misleading or

threatening them, preventing their use of the administrative procedure.  *Id.* at 1860.

### 2.   **Application**

C.O. Price argues that plaintiff's excessive force claim stemming from the events that occurred on August 9, 2019 is subject to dismissal due to plaintiff's failure to exhaust his administrative remedies.  Specifically, C.O. Price contends that plaintiff did not file an initial grievance prior to bringing suit, nor did he appeal the denial of any grievance concerning this claim to CORC.  (Defendant's Memorandum of Law at 14). In support of his position, C.O. Price has attached to his motion papers the sworn declarations of Rachael Seguin, the Assistant Director of the Incarcerated Grievance Program ("IGP") for DOCCS, and Morgan Swan, the Incarcerated Grievance Program Supervisor at Cayuga C.F.  (*See generally* Declaration of Rachael Seguin ("Seguin Decl."); Declaration of Morgan Swan ("Swan Decl.")) (Dkt. Nos. 41-3; 41-4).  These declarations, and the evidence attached as exhibits thereto, provide compelling evidence that plaintiff neither filed an initial grievance, nor appealed to CORC, concerning his claim of excessive force by C.O. Price occurring on August 9, 2019. (*See* Swan Decl. ¶¶ 20–29, Ex. B; Seguin Decl. ¶¶ 15–16).

Plaintiff's response to this defense is equivocal, at best.  In a prior pleading, plaintiff asserted that after returning from his medical trip on August 9th and being placed in the SHU, he "sent [three] letters to grievants [sic] I never got mail back or no one came to see me."  (Dkt. No. 5 at 11).  Plaintiff further alleged that when he got out of the SHU on August 20, 2019, he "went on a court trip so . . . could not appeal to the Superintendent within 72 hours[.]" (*Id.*).

At his deposition, plaintiff testified that while in the SHU he made three attempts to file a grievance against C.O. Price. (Pl.'s Dep. at 69–71). Plaintiff initially testified that he heard back from one of the grievances, but admitted that he could not remember if C.O. Price was named in that specific grievance. (*Id.* at 72). Plaintiff then, alternatively, asserted that C.O. Price was not named in all three of the grievances he attempted to file in the SHU, and "he think[s]" C.O. Price was only named in two out of the three. (*Id.*). Plaintiff could not remember if he received a response from either grievance. (*Id.*). Nor could plaintiff remember what the content of his grievances against C.O. Price actually were, with respect to the two he allegedly attempted to file. (*Id.* at 73). Plaintiff testified that he wrote to the grievance office to follow up about his grievance(s) against C.O. Price, but could not remember how many times or the content of his follow-up correspondences. (*Id.* at 73). Plaintiff admittedly did not retain any copies of the purported grievances or follow-up correspondences relative to his complaints against C.O. Price. (*Id.* at 71–73).[5]

Plaintiff's position is further confused by the arguments contained in his opposition to the instant motion. There, plaintiff asserts that he filed a grievance in "December of 2018," then appealed the decision to CORC. (Pl.'s Br. at 6). Plaintiff takes the position that, because he did not receive a response from CORC within the 30 day deadline, his administrative remedies should be deemed exhausted. (Pl.'s Br. at 6).

Notwithstanding plaintiff's arguments, the record before this court evidences his failure to exhaust administrative remedies with respect to the latter excessive force

---

[5]Plaintiff testified that he was unable to make or obtain copies of his grievance paperwork while confined in the SHU. (Pl.'s Dep. at 70).

claim against C.O. Price, to the extent that an initial grievance was never filed, nor was the claim appealed to CORC. As such, the question becomes whether plaintiff's failure to exhaust should be excused. To this end, the defendant has satisfied his initial burden of "establishing . . . that a grievance process exist[ed] and applie[d] to the underlying dispute." *Hubbs v. Suffolk County Sheriff's Dept.*, 788 F.3d 54, 59 (2d Cir. 2015) (citation omitted). DOCCS regulations provide that inmates in the SHU may file grievances by giving the complaint to a correction officer to forward to the grievance clerk. *See* N.Y.C.R.R. tit. 7, § 701.7. Thus, plaintiff assumes the burden of producing evidence that one of the exceptions to the administrative exhaustion requirement applies, excusing his failure to exhaust and permitting his claim to survive summary judgment. *Id.*

Liberally construed, plaintiff appears to argue that administrative remedies were unavailable to him as a result of his confinement in the SHU, and the restrictions imposed on him there. In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to an inmate housed in the SHU, in the context of grievances allegedly submitted to facility staff, but purportedly never filed. There, the plaintiff alleged that while housed in the SHU, he drafted a grievance that he delivered to a correctional officer to forward to the grievance office on his behalf. *Id.* at 120-21. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance and alleged that it was never filed by the officer to whom he had given it. It was undisputed the plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id*. at 124. The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed . . . [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id.* "Following the Second Circuits decision in *Williams*, several courts have concluded that where a grievance is both *unfiled* and *unanswered*, the process to appeal . . . is prohibitively opaque, such that no inmate could actually make use of it." *Maldonado v. Mandalaywala*, No. 9:17-CV-1303 (BKS/TWD), 2020 WL 1159426, at *15 (N.D.N.Y. Feb. 12, 2020), *report and recommendation adopted*, 2020 WL 1157643 (N.D.N.Y. Mar. 10, 2020) (internal quotation marks omitted) (listing cases).

For the following reasons, this court does not find *Williams* to be controlling in the instant matter.  At the outset, *Williams* reversed the underlying district court's decision on the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b).  Thus, the Second Circuit was compelled to accept as true the allegations in Williams's complaint, including his assertion that a particular correctional officer never filed his grievance relevant to the subject claim. *See Williams v. Priatno,* 829 F.3d at 124.  At the summary judgment stage, however, we are presented with a more complete record upon which to determine the existence of any genuine issues of material fact.  *See*

16

*Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998).[6]

Accordingly, in this instance the court need not mechanically accept plaintiff's vague allegation that he "tri[ed] [three] times to file a grievance [with] no response back." ( *See* Dkt. No. 5 at 10). Further discovery on the issue of exhaustion has revealed that plaintiff did not satisfy his burden of production of evidence overcoming the defendant's proof that the defendant did not pursue the grievance process that was available to him. Specifically, given plaintiff's uncertainty, and his inability to confirm or document whether he actually attempted to file a complaint against C.O. Price regarding the August 9, 2019 incident, he has not demonstrated a genuine issue of material fact with respect to the availability of the grievance process, notwithstanding the fact that he, like Williams, was confined to the SHU. *See, e.g., Armand v. Mosko*, No. 13-CV-5, 2019 WL 2374948, at *3 (W.D.N.Y. Apr. 9, 2019), *report and*

---

[6]In *Chance,* the Second Circuit noted the difference between the motion to dismiss standard of review and summary judgment standard in reversing the district court's dismissal of a complaint pursuant to Rule 12(b):

> It is important to recognize the difference between disposing of a case on a 12(b)(6) motion and resolving the case later in the proceedings, for example by summary judgment. At the 12(b)(6) stage, [t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test . . . .

> [Plaintiff] might not be able to prove his claims at trial. *And even at the summary judgment stage, it may well become clear that [plaintiff] cannot proffer sufficient proof to create genuine issues of material fact.* But in his complaint, he has alleged facts that are not impossible to prove and that, if demonstrated, would state a legally cognizable claim.

*Id.* at 701 (internal quotation marks and citations omitted) (alterations to original and emphasis added).

*recommendation adopted*, 2019 WL 2374001 (W.D.N.Y. June 4, 2019) (rejecting plaintiff's contention of unavailability based on her claim that, while housed in the SHU, she handed grievances to a corrections officer who never filed them, where plaintiff gave conflicting statements that were "unworthy of belief" that she actually filed the relevant grievance).

Notwithstanding plaintiff's allegation that he attempted to file a grievance against C.O. Price concerning the subject incident, plaintiff's contradictory assertions regarding the purported obstruction of his ability to do so undermine his efforts to document a material issue of fact.  Plaintiff testified that he filed grievances during his confinement in the SHU, and "no one stopped [him] from filing a grievance."  (Pl.'s Dep. at 70).  He elaborated that "[i]f they answered, that was the problem. . . . you file one grievance then you have to be able to get it through. Especially in the hole."  (*Id.*).

Historically, unsupported assertions that a plaintiff "filed a grievance but that it was somehow lost or destroyed" have generally been found "insufficient to establish a genuine issue of fact." *Blake v. Porlier,* No. 9:18-CV-1008 (DNH/CFH), 2019 WL 7484052, at *5 (N.D.N.Y. Oct. 4, 2019) ("Courts within the Second Circuit have continuously held that 'mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations.'") (quoting *Rodriguez v. Cross*, No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *5 (N.D.N.Y. May 9, 2017)); *Artis v. Dishaw*, No. 9:14-CV-1116 (MAD/ATB), 2016 WL 11266599, at *7 n.13 (N.D.N.Y. Sept. 12, 2016) (finding the plaintiff's failure to exhaust was not excusable, in part, because while the

18

plaintiff "state[d] that some grievances were destroyed . . . he ha[d] not submitted any copies of these grievances, nor d[id] he specify when he attempted to file them"), *report-recommendation adopted,* 2017 WL 1076343 (N.D.N.Y. Mar. 22, 2019); *Engles v. Jones*, No. 6:13-CV-6461, 2018 WL 6832085, at \*10 (W.D.N.Y. Dec. 28, 2018) ("Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact.") (citing *Scott v. Kastner Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018)).

At least one other district court has granted summary judgment on exhaustion grounds notwithstanding *Williams*, under circumstances where the plaintiff provided no specifics related to a grievance purportedly filed during his confinement in the SHU. *See, e.g., Sankara v. Montgomery,* No. 9:16-CV-00885 (FJS/TWD), 2018 WL 4610686, at \*8 (N.D.N.Y. June 25, 2018), *report and recommendation adopted*, 2018 WL 3408135 (N.D.N.Y. July 13, 2018) ("Plaintiff's conclusory allegations that the DOCCS IGP was unavailable to him [while confined to the SHU] were insufficient to withstand summary judgment," where the plaintiff "provided no evidence that he actually did write grievances; when they were written; the content of the grievances . . . the officers named in the grievance(s) . . .; the specific steps taken by Plaintiff to provide them to an officer to send to the grievance office; and any specific follow up with the grievance office[.]" ); *see also Tillman v. Phillips*, No. 9:19-CV-1597 (LEK/CFH), 2021 WL 5233308, at \*7 (N.D.N.Y. Nov. 10, 2021), *report and recommendation adopted*, 2021 WL 5768393 (N.D.N.Y. Dec. 6, 2021) (distinguishing the facts in that case from circumstances outlined in *Sankara*, where plaintiff has provided no specifics related to

grievance purportedly filed in SHU.).

Here, the court does not merely consider plaintiff's lack of direct evidence, such as copies of the relevant grievances, in finding that he has failed to establish a genuine issue of material fact as to unavailability. The court recognizes that an inmate-plaintiff's ability to process his grievances are curtailed to some extent while confined to the SHU. *See Rodriguez v. Cross,* No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Inmates not housed in the SHU are in a different position to SHU inmates when determining if grievance procedures are 'essentially unknowable' or unavailable.") (citation omitted).

However, plaintiff in this case has "done nothing more than allege in conclusory fashion that he attempted to file [a] . . . grievance" concerning excessive force at the hands of C.O. Price in August 2019. He has provided no specifics regarding when the grievances were written, their content, or the steps he took to provide them to an officer to send to the grievance office. There is also no documentary evidence to corroborate the fact plaintiff attempted to file a grievance, such as follow-up correspondences after his release from SHU. For these reasons, the court concludes that plaintiff's completely unsupported, unclear and vague implication that a grievance he attempted to file against C.O. Price relative to the August 9, 2019 incident was not properly processed does not suffice to avoid summary judgment. *Cf. Stephanski v. Allen*, No. 9:18-CV-0076 (BKS/CFH), 2020 WL 806331, at *9 (N.D.N.Y. Jan. 22, 2020), *report and recommendation adopted*, 2020 WL 777268 (N.D.N.Y. Feb. 18, 2020) (denying summary judgment despite lack of direct evidence concerning defendant's interference

20

with the grievance he attempted to file while in SHU where plaintiff's allegation of unavailability was supported by his proper response to defendants' statement of material facts, testimony under oath on two separate occasions, and some corroborating documentary evidence.). Accordingly, the court recommends that C.O. Price be granted summary judgment and the second amended complaint be dismissed against him as to this claim, on the ground that plaintiff failed to exhaust his administrative remedies.

**B.    Excessive Force**

Should the district court disagree with my recommendation that the second amended complaint be dismissed on exhaustion grounds, this court alternatively recommends granting summary judgment on the merits of plaintiff's Eighth Amendment excessive force claim, as further discussed below.

**1.    Legal Standard**

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). To sustain a claim of excessive force, a plaintiff must still establish both the objective and subjective elements of an Eighth Amendment claim. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999); *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

In order to satisfy the objective element of the constitutional standard for excessive force, a defendant's conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted);

21

*Hudson*, 503 U.S. at 9.  The malicious use of force to cause harm constitutes a per se Eighth Amendment violation, regardless of the seriousness of the injuries.  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims*, 230 F.3d at 22 (citation omitted).  With respect to this element, the law is clear that "a claim of excessive force may be established even if the victim does not suffer 'serious' . . . or 'significant' injury, . . . provided that the amount of force used is more than 'de minimis,' or involves force that is 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 7-10.

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  *Id*. at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the

defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

### B.   Application

With respect to the events of August 9, 2019, plaintiff's second amended complaint states that C.O. Price was aware that plaintiff had a "serious medical need" by virtue of "seeing [plaintiff] with a cane and special shoes on [his] feet." (SAC at 2). Plaintiff also avers that the housing officer "called [C.O. Price], letting him know [plaintiff] could not move fast enough because of [an] abscess [on his leg]." (*Id.*). Plaintiff contends that, despite this knowledge, C.O. Price "ignored the seriousness" of plaintiff's condition and "placed a small leg iron over [his] open wound[,]" causing the "wound to reopen to the point that the medical trip was delayed[.]" (*Id.*). Plaintiff then vaguely refers to "[f]oot and ankle injuries-causing infection or disease." (*Id.* at 3). Plaintiff provided additional factual context at his deposition, the majority of which has been previously summarized. In sum, plaintiff maintains that C.O. Price knew that plaintiff had a permit for "big boy" ankle restraints, due to a medical condition. Plaintiff testified that despite this knowledge, C.O. Price attempted to force standard sized ankle restraints on plaintiff because they were running late for a medical appointment, causing an abscess on his ankle to reopen and bleed in the process. (Pl.'s Dep. at 52–56).

For the following reasons, this court finds that plaintiff has not established a genuine issue of material fact with respect to either prong of the alleged Eighth Amendment violation. As for the subjective component of plaintiff's excessive force

23

claim, no reasonable fact finder could conclude that C.O. Price used force against the plaintiff maliciously and sadistically to cause harm based on the record presently before this court. Even assuming the truth of plaintiff's allegations, C.O. Price was attempting to place the standard size ankle restraints onto plaintiff because plaintiff had arrived late and they had to "hurry up and go" in order to make the medical appointment. (*See* Pl.'s Dep. at 52). It is undisputed that plaintiff was running late for his medical appointment, and that ankle restraints needed to be applied before he could be transferred out of the facility. Thus, the allegation that C.O. Price caused plaintiff's wound to reopen and bleed as he was attempting to prepare plaintiff for his medical trip, for which they were running late, does not rise to the level of an improper or wanton motive on the part of C.O. Price.

Moreover, the court finds that no reasonable fact finder would credit plaintiff's unsupported allegation that C.O. Price knew plaintiff required larger ankle restraints. C.O. Price has submitted a sworn declaration stating that he had no knowledge of plaintiff's purported medical permit for "big boy" cuffs. (Price Decl. at ¶¶ 18–20).[7] The documentary evidence submitted by C.O. Price in support of his motion, including the August 9, 2019 itinerary and the August 20, 2019 Tier II hearing disposition, support C.O. Price's further contention that plaintiff did not actually have a medical permit for larger ankle restraints in place at the time of the subject incident. (C.O. Price Decl. at ¶ 24, Exs. B, C). Plaintiff has failed to provide any evidence beyond his own

---

[7]Plaintiff did not respond to the defense's Statement of Material Fact that "C.O. Price had no recollection of such a permit as he had escorted Plaintiff on previous medical trips where standard sized restraints were utilized. Price Decl. ¶ 20." (Dkt. No. 41-5 at 3, ¶ 18).

conclusory statements in rebuttal. Because plaintiff has not submitted "proof that tends
to show that the alleged force used against him was employed maliciously and
sadistically to cause harm, he has failed to satisfy the subjective prong of his excessive
force claim." *Chambliss v. Rosini,* 808 F. Supp. 2d 658, 669 (S.D.N.Y. 2011) (citing
*Engles v. Dunbar*, No. 09 Civ. 2457, 2010 WL 5538517, at *7 (S.D.N.Y. Dec. 30,
2010) (concluding that the subjective component of excessive force test not satisfied
where uncontroverted evidence established that force was used not maliciously or
sadistically, but instead to transport the plaintiff in order to receive medical attention)).

      Nor is the court convinced that plaintiff could satisfy the objective component of
his excessive force claim.  Courts in this district "routinely dismiss claims of excessive
force based on tight handcuffing where an inmate asserts only a *de minimis* injury
without plausible allegations of wantonness or maliciousness." *Livingston v.
Hoffnagle,* No. 9:19-CV-0353 (GLS/CFH), 2019 WL 7500501, at *4 (N.D.N.Y. Nov. 8,
2019) (listing cases); *see also Burroughs v. Mitchell*, 325 F. Supp.3d 249, 265
(N.D.N.Y. 2018) (dismissing pro se inmate's excessive force claim where he alleged
only that the defendants "handcuffed him tightly, which caused cuts to his wrist")
(internal quotation marks omitted); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 213
(N.D.N.Y. 2015) (dismissing excessive force claim based on tight handcuffing where
the complaint alleged, without more, that the handcuffs caused "pain, swelling, and
bruising") (internal quotation marks and brackets omitted).

      Here, plaintiff merely alleges that, in attempting to place restraints on his ankles,
C.O. Price "popped open a scab" on plaintiff's leg, causing it to bleed.  (Pl.'s Dep. at

53–54, 65).  C.O. Price disputes the fact that he caused any injury to plaintiff with the restraints (Price Decl. at ¶ 32), and there is no medical documentation before this court evidencing the contrary.  In any event, the parties agree that plaintiff ultimately had his leg wrapped at the medical unit before being transferred to SUNY Upstate.  (Pl.'s Dep. at 53–54; Price Decl. at ¶ 23).  Assuming plaintiff's version of the facts, his leg was wrapped but "still bleeding" when he was placed in the SHU.  (Pl.'s Dep. at 54).  Plaintiff could not recall how long it took for his wound to stop bleeding, but concedes that he did not require stitches and that the wound healed "at some point."  (*Id.* at 60–61, 65–66).

Plaintiff testified that he did not obtain treatment for the injury, other than wrapping his leg – however, plaintiff concedes that his leg required continuous "wrapping" prior to the alleged incident. (*Id.* at 66).  Notwithstanding plaintiff's self-serving assertion that his alleged injury caused him pain which he described as a "9 ½" on a scale of one to ten, given his *de minimis* injury, plaintiff has failed to document a material issue of fact with respect to the objective component of the excessive force standard.  *See Warren v. Purcell*, No. 03 Civ. 8736, 2004 WL 1970642, at *8 (S.D.N.Y. Sept. 3, 2004) (officers who placed prisoner in tight restraints did not violate constitution where prisoner suffered de minimis injuries and no improper or wanton motive was alleged for the officers' actions).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant C.O. Price's motion for summary judgment (Dkt. No. 41) be **GRANTED**, and the second amended complaint **DISMISSED IN ITS**

**ENTIRETY WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:   December 29, 2021

Andrew T. Baxter
U.S. Magistrate Judge